UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| BATESVILLE CASKET COMPANY, INC., | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) Case No. 4:07-cv-12 ) |
| UNITED STEEL WORKERS OF AMERICA, LOCAL UNION NO. 9137, | ) Judge Mattice ) ) |
| *Defendant*. | ) ) |

## **MEMORANDUM AND ORDER**

Plaintiff Batesville Casket Company, Inc. ("Company") brings the above-captioned against Defendant United Steel Workers of America, Local Union No. 9137 ("Union") pursuant to § 301 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185. The Company seeks to vacate a portion of a labor arbitration award issued against it. Before the Court are the Company's Motion for Summary Judgment [Court Doc. 64] and the Union's Motion for Enforcement of Arbitration Award [Court Doc. 27], which the Court will treat as a motion for summary judgment.

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  FACTS

Except as otherwise noted, the facts set forth below are not in contention.

The Company and the Union have entered into successive collective bargaining agreements ("CBAs") pursuant to the NLRA. The first CBA relevant to the instant action, the 1999 CBA, expired on September 4, 2005. (Court Doc. 17-3, 1999 CBA art.

21.) The 1999 CBA was in force when the grievances at issue here were submitted and when the occurrences which gave rise to these grievances transpired. The 1999 CBA provides, in pertinent part:

## ARTICLE 4

## GRIEVANCE PROCEDURE

<u>Section 4.02</u>. <u>Grievance Procedure</u>. A grievance shall be settled as follows:

. . . .

Step 4. . . . . [In the event the grievance is submitted to arbitration, t]he arbitrator's power is limited to deciding whether the company has violated a specific promise in this Agreement.

<u>Section 4.04</u>. <u>Arbitration Hearings</u>. Each arbitration hearing shall deal with not more than one grievance except by mutual written agreement of the Company and the Union.

<u>Section 4.05</u>. <u>Exclusive Remedy</u>. The procedure for the resolution of a grievance set forth in this Article is exclusive.

. . . .

## ARTICLE 21

## DURATION, CHANGE, RENEWAL OF AGREEMENT

. . . .

If either party desires to terminate or modify this Agreement, it shall give the other party written notice of such desire . . . .

(1999 CBA arts. 4, 21.) Additionally, the 1999 CBA sets forth a mandatory, four-step process for resolving grievances which culminates in arbitration. (*Id.* art. 4.)

As the 1999 CBA neared expiration, the Company and the Union negotiated a successor agreement, which went in to effect on September 5, 2005 ("2005 CBA").

(Court Doc. 1-4, 2005 CBA art. 21.) The 2005 CBA contains a similar mandatory, four-step process for resolving grievances. (*Id.* art. 4.)

In early 2005, a dispute arose between the Company and the Union regarding whether certain Union employees—tool crib attendants—were entitled to weekend overtime. This dispute ripened to Grievance Numbers 2005-018 and 2005-022, which were submitted by Union members on January 8, 2005, and January 26, 2005, respectively. (Court Docs. 1-2 and 1-3, Grievance Reports.) These grievances were submitted to arbitration on February 2, 2006. (Court Doc. 1-5, Arbitrator's Award 2.)

On July 24, 2006, the Arbitrator issued his Opinion and Award of Arbitration, which recited that "[t]he parties agree that the dispute is properly before the Arbitrator, that Grievances 2005-08 [sic] and 2005-022 are representative of other pending disputes involving the same issues, and that the decision in this case will resolve the other disputes." (*Id.* 2.) The Arbitrator found that the "Company violated the 1999 Agreement from January 1 to September 5, 2005 and the 2005 Agreement since September 5, 2005 . . . ." (*Id.* 13.) The Arbitrator retained jurisdiction over the dispute "for the purpose of resolving any disagreements between the parties about the remedy which has been awarded." (*Id.* 17.)

In response to the Union's Request for Clarification (Court Doc. 1-6), the Company argued to the Arbitrator that the parties submitted only alleged violations of the 1999 CBA to the Arbitrator, and that the Arbitrator lacked jurisdiction to interpret the 2005 CBA. (Court Doc. 1-7, Company's Resp. to Union's Request for Clarification.)

- 4 -
Case 4:07-cv-00012   Document 71   Filed 08/26/08   Page 4 of 13   PageID #: 375

The Arbitrator found that the parties had, in fact, submitted to arbitration issues under the 2005 agreement. (Court Doc. 1-8, Addendum to Arbitrator's Opinion and Award.) In support of his determination, the Arbitrator relied on the following:

(1) During his opening statement at the arbitration hearing, the Union's representative stated:

> The parties reached an agreement that there was no need to continue to file multiple grievances for each weekend and down days that the [tool crib attendants were allegedly entitled to work.]
> The Agreement was that the decision in this case would dictate how those weekends that occurred after these two grievances were filed would be treated relative to this issue. [1]

(*Id.* 3.) The Company's representative did not object to this statement. (*Id.*)

(2) "During the arbitration hearing, both parties introduced exhibits which included records of instances [occurring] before and after [the 2005 CBA went into effect], without making any distinction between the instances which occurred during the term of the 2005 Agreement." (*Id.* 4.)

Based on these points, the Arbitrator concluded that

> [t]he fact that the instances which were the basis of Grievances 2005-08 [sic] and 2005-022 occurred during the 1999 Agreement and the instances that are now in dispute [as to the Arbitrator's jurisdiction] occurred under the 2005 Agreement makes no difference since the applicable contract language is identical in both collective bargaining agreements, and since the [Arbitrator's] Opinion and Award is binding on the parties, the same interpretation of the applicable contractual provisions controls the outcome of any disputes over subsequent instances unless and until the parties negotiate changes to [these applicable contractual provisions] or mutually agree to interpret the language of these provisions differently.

---

[1] According to the Union, "[t]he verbal agreement between Mary Jo Cartwright, Plaint Manager and Richard Summers, USW L.U. 9137 Vice President was to use [the Award] to resolve all future similar incidents by using [the arbitrator's] decision in this case." (Union's Request for Clarification of Arbitrator's Award 1.) The Company disputes that any such agreement applied to tool crib attendants. (Company's Response to Union's Request for Clarification 1.) This dispute is immaterial to the issues before the Court on the pending motions.

(*Id.*)

## III. ANALYSIS

In response to the Addendum to Arbitrator's Opinion and Award, the Company filed the instant action to challenge the enforceability of the Arbitrator's Opinion and Award insofar as it relates to the 2005 CBA. In asking the Court to review and overturn the Arbitrator's award, the Company faces an uphill battle. "A court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam)). Recently, the United States Court of Appeals for the Sixth Circuit has reworked this standard. A court may overturn an arbitrator's award only if it is based on a "procedural aberration" so that, in effect, the award "simply reflect[s] the arbitrator's own notion[ ] of industrial justice . . . ." *Mich. Family Res., Inc. v. Serv. Employees Intern. Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38-40 n.10 (1987)). To determine whether an award is based on a "procedural aberration," a court must ask:

> Did the arbitrator act outside his authority by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator arguably construing or applying the contract? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made serious, improvident or silly errors in resolving the merits of the dispute.

*Id.* (internal quotations omitted). The Company primarily argues that the Arbitrator exceeded his authority by resolving a dispute not committed to arbitration. To evaluate the Company's argument, the Court must answer two principal questions.

### A. What was the Original Scope of the Arbitrator's Authority?

As explained above, the Arbitrator concluded that the parties submitted to arbitration the issue of whether the Company violated the 2005 CBA. "[T]he extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's decision that the parties have indeed submitted a particular issue for arbitration." *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 335 (6th Cir. 1985). Further, an "arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Mich. Family Res., Inc.*, 475 F.3d at 756. Thus, the Court must look to the 1999 and 2005 CBAs to determine whether the Arbitrator overstepped his authority.

A review of the plain language of the 1999 and 2005 CBAs reveals two distinct grounds upon which the Court could base a conclusion that the Arbitrator exceeded his contractual authority by purporting to issue an award under the 2005 CBA. Further, the Sixth Circuit very recently rejected a portion the Arbitrator's line of reasoning as to whether the 2005 CBA applies to the parties' disagreement.

First, it is undisputed that Grievance Numbers 2005-018 and 2005-022 were submitted under the mandatory, four-step dispute resolution process set forth in Article 4 of the 1999 CBA. The 1999 CBA limits the Arbitrator's power "to deciding whether the company has violated a specific promise in this Agreement." (1999 CBA Art. 4, Sect.

- 7 -
Case 4:07-cv-00012   Document 71   Filed 08/26/08   Page 7 of 13   PageID #: 378

4.02.)  Article 4, Section 4.04 of the 1999 CBA also mandates that "[e]ach arbitration hearing shall deal with not more than one grievance except by mutual written agreement of the Company and the Union."

Nothing in the record before the Court suggests that the Company and the Union entered into such a written agreement.  Instead, both the Union and the Arbitrator relied on an alleged oral agreement between Union and Company representatives to "resolve all future similar incidents by using [the Arbitrator's] decision in this case."  (*Supra* note 1.)  This alleged oral agreement cannot, however, supplant the 1999 CBA's clear requirement for a "mutual written agreement" (1999 CBA, Art. 4, Sect. 4.04).  *See Int'l Bhd. of Elec. Workers v. Toshiba Am.*, 879 F.2d 208, 208-11 (6th Cir. 1989) (holding that an oral side agreement that conflicts with express provisions of a CBA does not expand an arbitrator's authority beyond what is granted by the CBA).  In other words, any issue regarding the substance of an oral agreement, or whether such an agreement even exists, is outside the scope of what the parties agreed was subject to arbitration, as memorialized by the 1999 CBA.  *See Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 415 (6th Cir. 2008) (interpreting *Toshiba Am.*, 879 F.2d at 210).

Moreover, as observed above, the 1999 CBA sets forth a four-step dispute resolution process which is the exclusive procedure for bringing a grievance to arbitration.  (1999 CBA Art. 4, Sects. 4.02, 4.05.)  The 2005 CBA employs a similar mandatory procedure.  (2005 CBA Art. 4, Sects. 4.02, 4.05.)  It is undisputed that, in conjunction with the arbitration hearings at issue, the parties did not file grievances under the 2005 CBA.  Therefore, no such grievances progressed through the

mandatory, four-step procedure required before any dispute under the 2005 CBA would be subject to arbitration. (*Id.*) Accordingly, the Arbitrator did not have authority to render decisions under the 2005 CBA. *Armco Employees Indep. Fed., Inc. v. AK Steel Corp.*, 149 Fed. App'x 347, 351-52 (6th Cir. 2005) (holding that an arbitrator acts outside his authority by purporting to determine issues that have not been submitted to arbitration through express grievance procedures).

Finally, the Sixth Circuit very recently rejected a facet of the Arbitrator's reasoning as to the applicability of his Award to grievances which would properly be subject to the 2005 CBA. As noted above, in his Addendum to Arbitrator's Opinion and Award, the Arbitrator concluded that

> [t]he fact that the instances which were the basis of Grievances 2005-08 [sic] and 2005-022 occurred during the 1999 Agreement and the instances that are now in dispute [as to the Arbitrator's jurisdiction] occurred under the 2005 Agreement makes no difference since the applicable contract language is identical in both collective bargaining agreements, and since the [Arbitrator's] Opinion and Award is binding on the parties, the same interpretation of the applicable contractual provisions controls the outcome of any disputes over subsequent instances unless and until the parties negotiate changes to [these applicable contractual provisions] or mutually agree to interpret the language of these provisions differently.

(Addendum to Arbitrator's Opinion and Award 4.) In *Totes Isotoner Corporation*, the court rejected a similar line of reasoning, and held that

> [i]t is undisputed that the parties did not submit a grievance for resolution under the [later] CBA. Thus, . . . the Arbitrator reached a question not submitted to him by the parties when he opined that "if Management's decision was violative of the [earlier] agreement it is violative of the [later] agreement." Consequently, in reaching the question of the violation of the [later] CBA, the Arbitrator acted outside of his authority and therefore the supplemental award was properly vacated even under the narrow standard announced by *Michigan Family Resources*.

532 F.3d at 415-16. Accordingly, the above-quoted portion of the Arbitrator's ruling does not excuse his foray into matters not submitted to him for arbitration.

> **B.     Did the Company Nonetheless Expand the Scope of the Arbitrator's Authority?**

The Union contends that at the arbitration hearing the Company's representative expanded the scope of the Arbitrator's authority to include the 2005 CBA. Specifically, the Union argues that the Company waived the issue of limitations on the scope of the Arbitrator's authority by (1) failing to object during the Union representative's open statement, (2) introducing documents relating to time periods covered by the 2005 CBA and introducing the 2005 CBA itself during its presentation of evidence, and (3) by arguing the scope of Arbitrator's authority to the Arbitrator in response to the Union's Request for Clarification. The Court will address each of the Union's arguments in turn.

> 1.     *The Union Representative's Opening Statement*

The Union's representative remarked, in his opening statement during the arbitration hearing, that

> [t]he parties reached an agreement that there was no need to continue to file multiple grievances for each weekend and down days that the [tool crib attendants were allegedly entitled to work.]
> The Agreement was that the decision in this case would dictate how those weekends that occurred after these two grievances were filed would be treated relative to this issue.

(Addendum to Arbitrator's Opinion and Award 3.) The Company representative did not object to this statement. The Union contends that by failing to object, the Company waived any argument as to the Arbitrator's authority under the 2005 CBA.

"A party may waive its objection to the jurisdiction of the Arbitrators by acquiescing in the arbitration with knowledge of the possible defect." *Nationwide Mut.*

*Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (citing *Order of Ry. Conductors & Brakemen & Bhd. of R.R. Trainmen v. Clinchfield R.R. Co.,* 407 F.2d 985 (6th Cir. 1969)). The question of waiver is a mixed one of law and fact. *Nationwide Mut. Ins. Co.*, 330 F.3d at 846 n.3. As the Union is claiming waiver, it bears the burden of proof on this issue. *Id.* at 846 (citing *Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990)).

Generally speaking, "[a]lthough a waiver may be implied and not express, there must be evidence in the record to support that implication." *Carter v. Sowders*, 5 F.3d 975, 981 (6th Cir. 1993) (addressing waiver of constitutional rights). In the instant case, the language of the Union's representative quoted above is ambiguous, and cannot serve as the basis for waiver. This language makes no mention of the 2005 CBA, and could just as easily be read to apply to all disputes under the 1999 CBA, as opposed to all disputes under both agreements. Accordingly, the Court declines to find that the Company's failure to object to the Union representative's opening statement amounts to an implied waver of the Company's rights under the 2005 CBA.

> 2. *The Company's Introduction of the 2005 CBA and Documents Relating to Time Periods Covered by the 2005 CBA*

The Union next argues that the Company acquiesced to arbitration under the 2005 CBA by introducing evidence containing dates pertinent to the 2005 CBA. The parties do not dispute, however, that neither of them submitted a grievance under the 2005 CBA. That the Arbitrator evaluated occurrences under the 2005 CBA—without objection by the Company—"does not resolve the question of the Arbitrator's authority to *construe* the [2005] CBA." *Totes Isotoner Corp.*, 532 F.3d at 416-17. The parties

may argue the meaning of the 1999 CBA by comparing and contrasting it to the 2005 CBA without expanding the Arbitrator's authority to construe the 2005 CBA. *See id.*

### 3. *The Company's Arguments to the Arbitrator*

Finally, the Union contends that "[b]ecause the Company submitted the issue of the Arbitrator's authority directly to the Arbitrator, it has waived any claim that this issue should be decided by the Court." (Court Doc. 28, Pl.'s Mem. in Supp. of Mot. to Enforce Arbitration Award 18.) When coupled with the Union's prior arguments, this line of reasoning is inconsistent and illogical.

As discussed above, the Union argues that the Company waived, by inaction, its objection to the Arbitrator expanding his award to include the 2005 CBA. Now, the Union argues that the Company waived any objection to the Arbitrator's authority under the 2005 CBA by doing exactly the opposite—by voicing that objection to the Arbitrator. The law within the Sixth Circuit does not subject the Company to such an impossible dilemma. "Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court." *Armco Employees Indep. Fed'n, Inc. v. AK Steel Corp.*, 149 Fed. App'x 347, 352 (6th Cir. 2005). It is axiomatic that the converse cannot also be true. The Company cannot be held to have waived its argument as to the Arbitrator's authority by *either* failing to address the issue in front of the Arbitrator *or* by addressing the issue in front of the Arbitrator.

- 12 -
Case 4:07-cv-00012   Document 71   Filed 08/26/08   Page 12 of 13   PageID #: 383

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Company's Motion for Summary Judgment [Court Doc. 64] and **DENIES** the Union's Motion for Enforcement of Arbitration Award [Court Doc. 27]. The Court **VACATES IN PART** the Arbitrator's Opinion and Award and Addendum to Arbitration and Award insofar as they apply to the 2005 Collective Bargaining Agreement.

SO ORDERED this 26th day of August, 2008.

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
